UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VICKI MICHAEL, individually and as representative on behalf of a class of similarly situated persons,<br><br>    Plaintiff,<br><br>    v.<br><br>CONAGRA BRANDS, INC. PENSION PLAN FOR HOURLY RATE PRODUCTION WORKERS, an employee pension benefit Plan; CONAGRA BRANDS EMPLOYEE BENEFITS ADMINISTRATIVE COMMITTEE, the Plan Administrator; CONAGRA BRANDS APPEALS COMMITTEE, and DOES I-XX, individual members of the Plan administrative and/or appeals committees,<br><br>    Defendants. | Case No. 4:18-cv-00277-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are cross Motions for Summary Judgment filed by the parties. Dkts. 24, 30. The Court held oral argument on July 30, 2020, and took the motions under advisement. For the reasons set forth below, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment.

## II. BACKGROUND

The facts of this case are relatively straightforward. Plaintiff Vicki Michael began

working for Amfac Foods, Inc. at the Lamb-Weston plant in American Falls, Idaho, on October 7, 1974. In June 1988, Conagra Foods, Inc. took over the Lamb-Weston plant. Michael continued working at the plant until she retired on November 9, 2016. In total, Michael worked at the Lamb-Weston plant for 42 years, 13.5 years for Amfac and 28.5 years for Conagra.

In 1988, when Lamb-Weston changed ownership, Michael—and other Amfac employees—were paid out their retirement benefits from a prior Amfac retirement benefits plan. These employees were simultaneously enrolled in Conagra's retirement benefits plan—Defendant Conagra Brands, Inc. Pension Plan for Hourly Production Workers (the "Plan"). Upon retirement, Michael began collecting her retirement payments from the Plan.

Feeling that her benefits had been improperly calculated—specifically that she was not receiving benefits for 7 of her 13.5 prior years of work—Michael sent a letter on July 20, 2017, to Defendant Conagra Brands Employee Benefits Administrative Committee (the "Administrative Committee") claiming these lost benefits/objecting to their calculation of her benefits. The Administrative Committee denied Michael's letter on September 13, 2017. On November 1, 2017, Michael appealed the Administrative Committee's denial of her claim to Defendant Conagra Brands Appeals Committee (the "Appeals Committee"). On December 21, 2017, the Appeals Committee likewise denied Michael's claim.

As part of that denial, the Appeals Committee notified Michael that if she wanted to pursue her claim further, she would need to bring a civil action in federal court.

On June 18, 2018, Michael filed the instant Complaint. Dkt. 1. Defendants filed a

Motion for More Definite Statement (Dkt. 5) which the Court granted (Dkt. 10). Michael dutifully filed an Amended Complaint. Dkt. 11. In her Amended Complaint, Michael brings three causes of action; each based on the Employee Retirement Income Security Act of 1974 ("ERISA"). Michael brings these claims on behalf of herself and others similarly situated.

In early communications between the Court and counsel, it was decided that the most economical way to manage this litigation would be to first address the "merits" of Michael's claim and then, if necessary, move to class certification and beyond.

On March 2, 2020, Michael filed her motion for summary judgment. Dkt. 24. Defendants' cross-motion for summary judgment followed. Dkt. 30. The Court held oral argument, and the matters are now ripe for the Court's review.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (cleaned up). Importantly, the Court does not make credibility determinations at this stage of the litigation. Such determinations are reserved for the trier of fact. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992).

In considering a motion for summary judgment, the Court must "view[] the facts in

the non-moving party's favor." *Zetwick*, 850 F.3d at 441. To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (cleaned up). Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

The standard applicable to motions for summary judgment do not generally change if the parties file cross motions. *See, e.g.*, *Cady v. Hartford Life & Accidental Ins.,* 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013). However, the Court must evaluate each party's motion on its own merits. *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

### III. ANALYSIS

While the underlying facts of the case are relatively straightforward, the instant legal dispute is more nuanced. These "merit phrase" cross-motions for summary judgment revolve around certain language in the Plan regarding how benefits are calculated and the parties' competing interpretations of that language. The resolution of this dispute is, by all

accounts, dispositive of the case. The Court will begin by summarizing the language in dispute and the parties' opposing interpretations. It will then discuss the legal standard the Court must apply in ERISA cases as well as Michael's individual claims.

The Normal Retirement Basic Benefit formulation (i.e. how benefits are calculated) under the Plan is found in Section 4.02-1 of Supplement 26. Pursuant to Section 4.02-1, Michael's "basic benefit on normal retirement is a monthly pension for life equal to the product (rounded up to the next higher multiple of $.50 . . .) of (a) times (b), less (c), as follows":

> (a) The monthly pension per Year of Benefit Service shown in Appendix I for the participant's location.
> (b) The participant's number of Years of Benefit Service, including fractional years, but in no case including Benefit Service in excess of thirty-five (35) Years.
> (c) The amount of Past Service Retirement Income attributable to the participant under 4.02-3.

Section 4.02-3 goes on to explain that "Past Service Retirement Income" means:

> The monthly benefit payable under the Prior Plan on account of Service counted under 4.02-1. In recalculating benefits for a participant with over 35 Years of Benefit Service, an appropriate adjustment shall be made for Years of Benefit Service under the Prior Plan with a rate of monthly pension per year that is lower than the rate for the most recent years included in the participant's 35 Years of Benefit Service. A cash-out of the monthly benefit payable under the Prior Plan by the payment of a single sum distribution shall not prevent the amount of the monthly benefit that otherwise would be payable to a participant from being applied as an offset pursuant to 4.02-1(c).

It is undisputed that Michael had 42 years of benefit service when she retired. It is further undisputed that Michael's benefits are capped at 35 years of service per the Plan. Finally, it is undisputed that Michael already received a benefit from her prior Amfac buyout in the

MEMORANDUM DECISION AND ORDER - 5

amount of $106.48 per month. In Defendants' estimation, the calculation is, therefore, quite simple.

"A" in the plan equation is a dollar amount representing the monthly pension benefit for Michael's location (American Falls, Idaho). "B" is the number of years the dollar amount applies to Michael's total benefit: in this case, 42 years. However, per the Plan language, the benefit is capped at 35 years. Together, A and B represent the maximum pension benefit to which Michael is entitled under the Plan. According to Appendix I which sets forth the locality rates for Michael's years of service, the total benefit for Michael is $614.28 per month. But, because Michael is already receiving some of that benefit from the buyout that she took under the prior Amfac plan, "C" comes into play. "C" represents the Amfac benefit Michael receives in connection with her Amfac buyout ($106.48) and must be subtracted from her total. The new total—rounded up to the next $.50 per the Plan—is $508.00.[1] Thus, Conagra is essentially paying 21.5 years' worth of benefits and Amfac is paying 13.5 for a total of 35 years of service.

Defendants assert that their interpretation is valid, reasonable, and in line with the plain language of the Plan as well as its overarching purpose.

Michael, on the other hand, argues that the Plan language is ambiguous at best and that Defendants, the Administrative Committee, and the Appeals Committee are interpreting the language incorrectly.

According to Michael, the offset that must be applied pursuant to 4.02-3 is "the

---

[1] $614.28 – $106.48 = $507.80 (rounded up) = $508.00.

MEMORANDUM DECISION AND ORDER - 6

monthly benefit payable under the Prior Plan *on account of Service counted* under 4.02-1." Because the 35-year cap applies, Michael notes that she is not receiving credit for 7 years of service. She does not take issue with this. However, Michael claims that Defendants then impermissibly offset an additional 6.5 years from her benefit (in addition to the 7 years lost from the 35-year cap). In Michael's words:

> Even though seven years of [Michael's] Amfac service (1975- 1981) was **not** counted, Conagra plan committees . . . did indeed offset those seven years from [Michael's] Basic Benefit **in addition to** the 6½ years (1982-June 1988) which **were** counted in determining the Conagra Basic Benefit, i.e., 13½ years (the seven years not counted plus the 6½ years counted) rather than just the 6½ years actually counted. In other words, the Conagra plan committees offset not just what the prior Amfac plan paid [Michael] which accrued over the 6½ years (1982-June 1988) **counted** in determining the Conagra Base Benefit; the Conagra plan committees **further** reduced it by the part [Michael] was paid under the prior Amfac plan which accrued over the 7 years from 1975 to 1981—the seven years that were not counted in determining the Conagra Basic Benefit due to the 35-year cap.

Dkt. 24-3, at 3 (bolding in original). Said differently, Michael believes that the Plan "credited" her for 6.5 years of service, but alleges that the Administrative Committee impermissibly offset her benefit by all 13.5 years she had previously worked for Amfac.

Michael takes this position based upon language in the summary plan description ("SPD") which explains as follows:

> If you were a participant of the prior plan (Pension Plan for Hourly Bargaining Unit Employees of Amfac Foods, Inc.), the benefit determined above will be offset by the monthly benefit amount payable from the prior [Amfac] plan on account of benefit service credited under [the Conagra] plan.

Michael had accrued 13.5 years of service with Amfac. Under the Plan, only the most recent 35 years of service count towards an individual's retirement benefit. Thus, Michael

MEMORANDUM DECISION AND ORDER - 7

asserts she was getting "credit" for the years that overlapped (year 28.5 to year 35) but was being discounted all 13.5 (an extra 7 years). Said differently, Michael claims Conagra is paying 21.5 years' worth of benefits, but she is only getting 6.5 years' worth of Amfac benefits (the "credited" years) for a total of 28 years of service and that Conagra is shorting her those 7 remaining years that would otherwise get her to the 35-year cap (her working years 35-42).[2] The Court, however, disagrees because the Amfac payment Michael already receives is for *all Amfac years of service.*

Michael's interpretation rests on the assumption that she is only receiving Amfac benefits for 7 years of service (the years outside the 35-year cap) and, therefore, Conagra should pay the other 35 years of service. This, however, is not how the payments actually work in practice. The $106.48 per month Michael receives from the Amfac plan represents the Amfac buyout for **all** 13.5 years Michael worked for Amfac. Allowing some of those years to overlap with her Conagra years would effectively allow her to collect a double payment during certain years.

---

[2] Again, to be clear, Michael *is not* receiving benefits for seven years' worth of service; however, she is not entitled to those years due to the 35-year cap.

MEMORANDUM DECISION AND ORDER - 8

Defendants have provided the following graphic which is helpful in understanding the competing positions:

Michael's years of service are noted across the top. The first yellow bar represents the years Michael worked for Amfac. The orange bar represents the years Michael worked



for Conagra. The purple bar indicates the last 35 years of service or the time period Conagra used in order to calculate Michael's benefits. The green bar represents the years Michael wants offset from her benefit as those are "credited" or "counted" (i.e. the portion of the yellow years that make up part of her 35-year total). The blue bar represents the years Michael does not think Conagra should offset as those were "not credited" to her in the first place (i.e. she needs to get credit and payment for those years under the Conagra plan).

Again, the problem in this case is the yellow bar. Michael is already getting paid for all these years of service—$106.48 per month. She is not, as she asserts, being shorted by only receiving $508.00 per month (representing the 21.5 years Conagra is paying) because when the Amfac payment is added back in, she is receiving the $614.28 total benefit outlined in the Plan to which she is entitled. Were the Court to accept Michael's

MEMORANDUM DECISION AND ORDER - 9

interpretation, the green bar and half of the yellow bar would overlap, resulting in a double recovery.

Critically, Michael *acknowledges* that her monthly benefit prior to the offset is $614.28. She complains only of how the offset is calculated. Also critically, however, Michael does not offer any methodology for breaking down the Amfac benefit to determine a yearly amount. Nor is it likely she could. Of necessity, the Amfac payment has to equal the full term worked for Amfac because there was no way for Amfac to have known (back when it was purchased by Conagra) how long any employee would continue working at the plant (i.e. it could not have pre-emptively determined how many years would "count" and pay only that portion out) because it did not know if people would continue with Conagra, and if so, for what amount of time.

In her letter to the Administrative Committee, Michael asked that her benefit be recalculated using 1) only the 28.5 years she worked for Conagra or 2) offset only using the 7.5 years of Amfac service that overlap with her last 35 years of service. Again, however, were Defendants to have taken either approach, Michael would have received a benefit equal to 42 years of service under her first suggestion—the 28.5 years of Conagra plus the 13.5 years' worth of Amfac benefits she already receives—or 41 years of service under her second suggestion—35 years minus 7.5 years, plus the 13.5 years' worth of Amfac benefits she already receives. In both scenarios, however, Michael would have received more than 35 years' worth of service benefits. This does not square with Michael's own admission that the 35-year cap applies.

Ultimately, the Court agrees with Defendants' interpretation of the Plan language. Admittedly, the wording—of the Plan, the SPD, and other documents—is a bit difficult to parse through. Calculating a benefit plan spread over two employers, with caps, and certain years "counting" and others not, is frankly difficult. Difficult as it may be, however, Defendant's interpretation is accurate and holds to the essence of the Plan—that any employee who has worked for more than 35 years shall only receive a benefit equal to 35 years' worth of service. Michael claims that Defendant and the Administrative Committee essentially ignore the "credited years" language and short her various years. As the Court has explained, however, this is not the case. What's more, were the Court to adopt Michael's interpretation of the Plan language, it would ignore one of the main components of the Plan: the 35-year cap, which again has been acknowledged by both sides. This is something the Court is unwilling to do.

Now, even were the Court to agree with Michael—in her calculation, or more generally as to the Plan language—it still would not be enough to grant summary judgment in her favor. The Plan gives the Administrative Committee "the sole discretion and authority to control and manage the operation and administration of the plan . . . complete discretion to interpret the provisions of the plan, make findings of fact, correct errors, supply omissions, and determine the benefits payable under the plan." Dkt. 25-2, at 32–33, 92. As such, the decision to deny Michael increased pension benefits must be reviewed under the deferential abuse of discretion standard.[3] *Firestone Tire & Rubber Co. v. Bruch,*

---

[3] Michael acknowledges this is the standard the Court must utilize in its decision today.

MEMORANDUM DECISION AND ORDER - 11

489 U.S. 101, 115 (1989); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006).

Under this standard, "a plan administrator's decision 'will not be disturbed if reasonable.'" *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012) (quoting *Conkright v. Frommert*, 559 U.S. 506, 521 (2010)). Further, a reviewing Court should find an administrator's decision reasonable unless it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.*; *see also Tapley v. Locals 302 & 612 of Int'l Union of Operating Engineers-Employers Const. Indus. Ret. Plan*, 728 F.3d 1134, 1139 (9th Cir. 2013) (explaining that under the abuse of discretion standard, a plan administrator's decision is "entitled to a high level of deference and will not be disturbed unless it is not grounded on *any* reasonable basis" (internal quotations omitted) (emphasis in original)).

Here, the Court independently came to the conclusion that the interpretation as set forth by Defendants (and consequently the Administrative Committee) was correct. This illustrates that *that particular* interpretation is logical, reasonable, and can be upheld. However, even if the Court had reservations about its conclusion—and/or agreed with Michael's interpretation, calculations, or position that there was ambiguous language in the Plan or SPD—the highly deferential abuse of discretion standard would mandate the same outcome. The Court must defer to the Administrative Committee's interpretation unless it defies reason or logic. Michael has not put forth any evidence to call the Administrative Committee's interpretation into question other than her own competing interpretation.

With the above determination rendered in Defendants' favor, Michael's remaining arguments and claims fall by the wayside. The Court will only briefly address them here.

Michael claims that the Administrative Committee breached its fiduciary duty in applying the Conagra Plan contrary to the plain language of the Plan. Because the Court finds the Administrative Committee's interpretation was proper, it follows that its denial of Michael's claim was proper, that the Appeals Committees' denial was proper, and that neither breached their fiduciary duty. Their interpretation was accurate, supports the purpose of the Plan, and is in the best interest of the Plan participants.[4]

Michael asserts there is a conflict of interest inherit in these types of ERISA cases because the employer determines who is eligible for benefits, calculates those benefits, and pays those benefits and will (presumably) want to keep those determinations as narrow as possible to save money.

While this conflict may very well exist, it does not change the standard of review for the Court. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008) (explaining that a conflict does not change the standard of review from abuse of discretion to de novo);

---

[4] Michael also argues (in briefing, not as an actual claim) that the Conagra "Committees" (i.e. the Administrative Committee and the Appeals Committee) abused their discretion by interpreting the Plan in a way that lacked any rational basis and abused their discretion by denying her claim without adequate explanation. The first argument is unavailing as the Court has found the Administrative Committee's interpretation was, in fact, rational. Michael's second argument, while not meritless, is a bit "soft." Her belief that the Committees *could have* or *should have* explained their denial of her claim in clearer language is of little import. Just because the Committees did not explain the denials the way Michael wanted, does not mean their explanation was wrong. Specifically, Michael takes issue with Conagra's explanation that the way they interpreted the Plan here is how they have always interpreted the plan arguing that just because they have done it incorrectly in the past does not mean they are beholden to their erroneous ways in the present. Again, however, finding no error in the Committees' interpretations, the Court finds no merit in such an argument.

*Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 900 (9th Cir. 2016) (same). Furthermore, absent some actual or perceived wrongdoing—self-dealing, malice, history of failure to pay benefits—the conflict is of marginal relevance. *Glenn*, 554 U.S. at 117; *see also Reinking v. Alyeska Pipeline Serv. Co.*, 539 F. App'x 780, 781 (9th Cir. 2013).

Michael has not presented any evidence to support a finding that the Administrative Committee was biased or tainted by any conflict of interest.[5]

Michael seeks a surcharge, or recalculation and reimbursement, of past missed benefits. As the Court finds Defendants' interpretation is accurate, there is no lost benefits that need to be recalculated or repaid.

Finally, any other equitable relief or reformation alluded to by Michael in her briefing is inapplicable in light of the Court's finding above.

## V. CONCLUSION

While the Plan language arguably suffers from some inadequacies—for example, Conagra could simply rewrite the language to indicate "all" of any prior benefit is offset— Defendant's interpretation is consistent with the Plan and its purpose. Summary judgment is therefore appropriate in Defendants' favor.[6]

---

[5] Conagra explains that it has taken steps to abate any risk of bias and ensure accuracy and consistency in the claims process. For example, funding of the Plan is based on actuarial determinations not made by members of the Committees, and members of the Committees have no financial interest in whether benefits are paid.

[6] In finding the Committees' interpretation of the Plan language was appropriate and granting summary judgment in Conagra's favor, it thus follows that this case will not advance to phase II and further class discovery/certification as the Court's interpretation today applies to any and all similarly situated individuals.

## VI. ORDER

1. Michael's Motion for Summary Judgment (Dkt. 24) is DENIED.

2. Conagra's Motion for Summary Judgment (Dkt. 30) is GRANTED.

3. The Court will enter a separate judgment in accordance with Federal Rule of Civil Procedure 58.

DATED: October 30, 2020

_____
David C. Nye
Chief U.S. District Court Judge